UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GUALBERTO AGUSTIN-GOMEZ,<br><br>Defendant. | No. 1:16-cr-00009-DAD-BAM<br><br>ORDER DENYING DEFENDANT GUALBERTO AGUSTIN-GOMEZ'S MOTION FOR MODIFICATION OF SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A)<br><br>(Doc. No. 172) |

Pending before the court is a *pro se* motion for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) brought by defendant Gualberto Agustin-Gomez. (Doc. No. 172.) That motion is based in part on the purported risks allegedly posed to defendant by the ongoing coronavirus ("COVID-19") pandemic. For the reasons explained below, defendant's motion will be denied.

**BACKGROUND**

On July 21, 2016 a superseding indictment was returned charging defendant Gualberto Agustin-Gomez and his seven co-defendants with eleven counts of various drug offenses, including Count One for conspiracy to distribute 50 grams or more of methamphetamine and/or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A) and Count Eight

1

for possession of 50 grams or more of methamphetamine and/or 500 grams or more of a mixture or substance containing a detectable amount of with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and (b)(1)(C). (Doc. No. 97.) On September 11, 2017, defendant Agustin-Gomez entered a plea of guilty to Count One (one of the only two counts of the superseding indictment in which he was charged), pursuant to a written plea agreement. (Doc. Nos. 117, 119.) On January 25, 2018, the court sentenced defendant Agustin-Gomez to 90 months imprisonment in the custody of the U.S. Bureau of Prisons ("BOP"), to be followed by a 36-month term of supervised release, which is to become unsupervised if he is deported. (Doc. No. 127.) The court also imposed the mandatory $100 special assessment. (*Id.*)

Defendant Agustin-Gomez is currently serving his sentence at Fort Worth Federal Medical Center ("Fort Worth FMC") in Fort Worth, Texas. (Doc. No. 196 at 3.) Before his transfer to Forth Worth FMC on February 23, 2021, defendant Agustin-Gomez was incarcerated at Correctional Institution Reeves I/II ("CI Reeves I/II") in Pecos, Texas. (*Id.*) As of the date of this order, defendant Agustin-Gomez has served approximately 63 months, or 70% of his full 90-month sentence. (Doc. No. 196-1 at 4.) Accounting for good time credit, his projected release date is November 30, 2022. (*Id.*)

On March 1, 2021, defendant filed a *pro se* motion seeking a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 172.) The court referred defendant's motion to the Federal Defender's Office and appointed counsel to represent defendant in connection with his pending motion seeking compassionate release. (Doc. Nos. 174, 180.) On June 2, 2021, appointed counsel notified the court that no supplemental motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) would be forthcoming. (Doc. No. 185.) The government filed its opposition to the pending motion on July 2, 2021. (Doc. No. 196.) Defendant did not file a reply.

Notably, while his motion for compassionate release was pending before the court, defendant Agustin-Gomez received both doses of the Pfizer-BioNTech COVID-19 vaccine and is now fully vaccinated; he received the first dose on April 12, 2021 and the second dose of the vaccine on May 4, 2021. (Doc. Nos. 200 at 44—sealed; 196 at 7.)

/////

**LEGAL STANDARD**

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020). Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP. 18 U.S.C. § 3582(c)(1)(A) (2002). Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018). In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[1] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that —
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy

---

[1] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the regional director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

3

statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[2]

    The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sent'g Guidelines Manual ("U.S.S.G.") § 1B1.13 (U.S. Sent'g Comm'n 2018)[3]; *see also United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020) (noting that many courts have relied on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, the Ninth

---

[2] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, Law360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, Law360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[3] According to U.S.S.G. § 1B1.13(2), to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). However, as the Ninth Circuit has now clarified, "[t]his dangerousness finding is not statutorily required under 18 U.S.C. § 3582(c)(1)(A)(i), but [it] is part of the Sentencing Commission's policy statement in U.S.S.G. § 1B1.13(2)." *United States v. Aruda*, 993 F.3d 797, 799 (9th Cir. 2021).

Circuit has now held "that the current version of U.S.S.G. § 1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). "In other words, the Sentencing Commission has not yet issued a policy statement 'applicable' to § 3582(c)(1)(A) motions filed by a defendant." *Id.* The Ninth Circuit has concluded that "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id.* (citing *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)).

In so holding, the Ninth Circuit joined the five other circuits who have addressed this issue and have unanimously held "that U.S.S.G. § 1B1.13 only applies to § 3582(c)(1)(A) motions filed by the BOP Director, and does not apply to § 3582(c)(1)(A) motions filed by a defendant." *Id.*; *see, e.g.*, *United States v. Brooker (Zullo)*, 976 F.3d 228, 237 (2d Cir. 2020) ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."); *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020) ("In cases where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13."); *Gunn*, 980 F.3d at 1181 ("[T]he Guidelines Manual lacks an 'applicable' policy statement covering prisoner-initiated applications for compassionate release. District judges must operate under the statutory criteria—'extraordinary and compelling reasons'—subject to deferential appellate review."); *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) ( "In short, we agree with the Second Circuit and the emerging consensus in the district courts: There is as of now no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A), and as a result, district courts are 'empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'") (citation omitted); *United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021)

("We therefore agree with the district court that under the second part of § 3582(c)(1)(A)'s test, its finding that extraordinary and compelling reasons warranted a reduction in Maumau's case was not constrained by the Sentencing Commission's existing policy statement, U.S.S.G. § 1B1.13.").

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate release brought pursuant to § 3582(c) as amended by the FSA, district courts to have done so agree that the burden remains with the defendant. *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, *3 (W.D. Wash. May 7, 2020).

## ANALYSIS

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id*. Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id*.

*United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019); *see also United States v. Ramirez-Suarez*, No. 16-cr-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *United States v. Parker*, 461 F. Supp. 3d 966, 970 (C.D. Cal. 2020); *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in § 3553(a)).

/////

**A.     Administrative Exhaustion**

In this case, the government concedes that defendant has exhausted his administrative remedies prior to filing his pending § 3582 motion. (Doc. No. 196 at 4.) Specifically, defendant Agustin-Gomez submitted a request for compassionate release to the warden of CI Reeves I/II on January 4, 2021, and the warden denied that request on January 7, 2021.[4] (Doc. No. 172 at 10.) Accordingly, the court will turn to address the merits of defendant's motion.

**B.     Extraordinary and Compelling Reasons**

According to the Sentencing Commission's policy statement, "extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D). As addressed above, even though the catch-all of "other reasons" was included in the policy statement at a time when only the BOP could bring a compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own motions for reductions in their sentence under the FSA. *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-00236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases.) Moreover, in light of the Ninth Circuit's decision in *Aruda*, while U.S.S.G. § 1B1.13 may inform its determination, this court is not restricted thereby and instead has "full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Jones*, 980 F.3d at 1111.

The medical condition of a defendant may warrant the granting of compassionate release by the court where the defendant "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Non-exhaustive examples of terminal illnesses that may warrant a compassionate

---

[4] Neither party has addressed whether the defendant was required to appeal the warden's denial in order to exhaust his administrative remedies. Because a failure to exhaust administrative remedies is normally viewed as an affirmative defense which must be pled and proven, the court will accept the government's concession regarding administrative exhaustion and will address the merits of defendant's pending motion.

7

release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id*. In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

> The defendant is
>
> (I)   suffering from a serious physical or medical condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id*. at cmt. n.1(A)(ii). Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, many courts have concluded that the risks posed by COVID-19 may tip the scale in favor of release when the particular circumstances of a case are considered in their totality. *See, e.g.*, *Parker*, 461 F. Supp. 3d at 980 ("Since the onset of the COVID-19 pandemic, courts have determined that inmates suffering from conditions such as hypertension and diabetes are now at an even greater risk of deteriorating health, presenting 'extraordinary and compelling' circumstances that may justify compassionate release.") (collecting cases); *United States v. Rodriguez*, 451 F. Supp. 3d 392, 405 (E.D. Pa. 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors. Thus, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B).[5]

---

[5] Here, however, because defendant Agustin-Gomez is only 45 years old (Doc. No. 196-1 at 2), his age and age-related factors do not play a role in consideration of his pending motion.

In his pending motion, defendant argues that extraordinary and compelling reasons warranting a reduction of his custodial sentence exist because he suffers from hyperthyroidism, hyperlipidemia, and essential (primary) hypertension. (Doc. No. 172 at 3.) He further argues that conditions of his imprisonment create an ideal environment for the transmission of contagious diseases because of crowding, inadequate ventilation, and unspecified security issues. (*Id.*) In addition, defendant contends that CI Reeves I/II staff demonstrated their complacency with the spread of COVID-19 by failing to adequately test the institution's inmates for the virus. (*Id.* at 4–5.)

In its opposition to the pending motion, the government argues that defendant Agustin-Gomez has failed to carry his burden of establishing his eligibility for compassionate release because the mere existence of COVID-19 in society or in the correctional institution where he is imprisoned is not an extraordinary or compelling reason justifying the granting of the requested relief. (Doc. No. 196 at 7.) Moreover, the government counters defendant's generalized concerns about COVID-19, his health conditions, and conditions at CI Reeves I/II by emphasizing that defendant has been fully vaccinated against COVID-19. (*Id.*) Lastly, the government points out that defendant is no longer imprisoned at CI Reeves I/II because he has since been transferred to Fort Worth FMC. (*Id.* at 9.)

The court concludes that defendant has failed to demonstrate the existence of extraordinary and compelling reasons calling for his compassionate release from confinement in light of the critical fact that he is now fully vaccinated, combined with the fact that his conclusory and generalized arguments regarding his alleged inability to provide self-care during this pandemic relate only to the alleged prior conditions of his confinement at CI Reeves I/II, not to his current conditions of confinement at Fort Worth FMC. As to defendant's vaccination status, he received his second dose of the Pfizer-BioNTech vaccine on May 4, 2021. (Doc. No. 200 at 44—sealed.) Because more than two weeks have passed since receiving that second dose, defendant is now fully vaccinated against the virus. *See COVID-19: When You've Been Fully Vaccinated*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html (last updated Oct. 15, 2021).

In light of all of the above, the court concludes that defendant Agustin-Gomez has not met his burden of demonstrating extraordinary and compelling reasons for his compassionate release under § 3582(c)(1)(A), in large part because, as this and many other courts have recognized, any risk posed to him by COVID-19 has been mitigated by his receiving the COVID-19 vaccination. *See United States v. Barajas-Guerrero*, No. 1:17-cr-00148-NONE, 2021 WL 1839728, at *6 (E.D. Cal. May 7, 2021); *see also United States v. Ochoa-Alapisco*, No. 14-378(2) ADM/LIB, 2021 WL 2322680, at *3 (D. Minn. June 7, 2021) (denying compassionate release because "any risk...has been substantially reduced because [defendant] is likely now fully vaccinated" which "provides him with significant protection against severe illness or death from COVID-19 should he become reinfected."); *United States v. Willis*, 3:15-cr-00465-BR, 2021 WL 2179256, *3-4 (D. Ore. May 27, 2021) (citing cases); *United States v. Smith*, No. 2:98-cr-00009-KJM-CKD, 2021 WL 1890770, at *3 (E.D. Cal. May 11, 2021) ("Although no federal court of appeal appears to have considered the question, district courts across the country, including within this Circuit, have held almost uniformly that a defendant's vaccination undercuts any claims of 'extraordinary and compelling reasons' based on a high risk of infection."); *United States v. Kariblghossian*, No. 2:13-cr-00318-CAS-1, 2021 WL 1200181, at *3 (C.D. Cal. Mar. 29, 2021) (finding no extraordinary and compelling reasons for compassionate release where a defendant has been fully vaccinated); *United States v. Grummer*, 519 F. Supp. 3d 760, 763 (S.D. Cal. 2021) ("Although Defendant suffers from several chronic medical conditions, his vaccination significantly mitigates the risk that he will contract COVID-19. Other courts to address the issue have reached similar conclusions."); *United States v. Ballenger*, No. 16-cr-5535-BHS, 2021 WL 308814, at *5 (W.D. Wash. Jan. 29, 2021) ("[B]ecause [defendant] has already been infected and vaccinated, his chronic medical conditions alone do not amount to an extraordinary and compelling reason to warrant compassionate release."). Therefore, defendant's motion for compassionate release will be denied.

**C.     Consistency With the § 3553(a) Factors**

Finally, even if defendant Agustin-Gomez's motion was supported by a showing of extraordinary and compelling reasons for his compassionate release, the undersigned is not

persuaded that the requested reduction in his sentence would be consistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a).[6] *See Parker*, 461 F. Supp. 3d at 979.

Defendant does not raise any arguments with respect to the § 3553(a) factors. Nonetheless, the government makes several arguments in its opposition as to why defendant's release would not be consistent with the § 3553(a) factors. First, the government contends that defendant has only served a small portion of his sentence. (Doc. No. 196 at 9.) Second, the government asserts that the circumstances of defendant's offense—as well as defendant's history and characteristics—do not warrant his release. (*Id.* at 10.) Specifically, the government avers that defendant was residing in the United States illegally, he assisted in packaging and transferring a significant quantity of methamphetamine for distribution, and he was on probation at the time of his arrest in this case. (*Id.*) Specifically, defendant was on probation for a felony conviction stemming from a traffic enforcement stop where officers located approximately half a pound to one pound of heroin. (*Id.*)

As noted above, defendant is currently serving a 90-month sentence of imprisonment for conspiracy to distribute methamphetamine. (Doc. No. 196-1.) With his early acceptance of responsibility and due to his being found to only be a minor participant in the alleged criminal activity, the U.S. Probation Office determined that defendant's total offense level was 29 and his criminal history was II, resulting in an advisory sentencing guideline range calling for a term of imprisonment between 97 and 121 months. (Doc. No. 128 at 4.) Accounting for defendant's prior felony drug trafficking conviction and his involvement within the conspiracy, the probation

---

[6] Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court shall consider: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

officer recommended a middle of the guideline range sentence of 108 months imprisonment. (*Id.* at 4.) The undersigned relied upon its careful consideration of the § 3553(a) factors in varying downward from the advisory sentencing guideline range and imposing a 90-month term of imprisonment in defendant's case. (Doc. No. 127.)

As of the date of this order, defendant has served a little over 70 percent of the 90-month sentence imposed. (Doc. No. 196-1 at 4.) "The length of the sentence remaining is an additional factor to consider in any compassionate release analysis,' with a longer remaining sentence weighing against granting any such motion." *United States v. Shayota*, No. 1:15-cr-00264-LHK-1, 2020 WL 2733993 at *6 (N.D. Cal. May 26, 2020) (quoting *United States v. Connell*, No. 18-cr-00281-RS, 2020 WL 2315858, at *6 (N.D. Cal. May 8, 2020)); *see also United States v. Lonich*, No. 1:14-cr-00139-SI-1, 2020 WL 2614874, at *3 (N.D. Cal. May 21, 2020) (denying motions for compassionate release, noting, "the Court finds it significant that defendants have served far less than half of their sentences"). In the court's view, considering that defendant already received a below-guideline range sentence, a reduction of his 90-month sentence effectively to one of just over five years would not adequately reflect the seriousness of his offense of conviction, promote respect for the law, provide just punishment, or afford adequate deterrence to criminal conduct. *See United States v. Purry*, No. 2:14-cr-00332-JAD-VCF, 2020 WL 2773477, at *2 (D. Nev. May 28, 2020); *Shayota*, 2020 WL 2733993 at *5; 18 U.S.C. § 3553(a).

Moreover, reducing defendant Agustin-Gomez' custodial sentence to one of approximately 63 months may result in unwarranted sentence disparities among his co-defendants. Neither defendant Agustin-Gomez nor the government address this factor, but the court notes that co-defendant Antonio Valencia-Hernandez—who also entered a guilty plea to Count One of the superseding indictment for conspiracy to distribute controlled substances—had a total offense level of 35 and a criminal history category of II, resulting in an advisory sentencing guideline range calling for a term of imprisonment of between 188 and 235 months, and was sentenced to 147 months imprisonment. (Doc. Nos. 236 at 4; 244 at 2.)

/////

Thus, on balance, the court finds that granting defendant's motion and reducing his sentence to time served would not be consistent with the § 3553(a) sentencing factors.

## CONCLUSION

Because defendant Agustin-Gomez has failed to demonstrate that "extraordinary and compelling" reasons exist justifying a reduction of his sentence under 18 U.S.C. § 3582(c)(1)(A) or that such a reduction at this time would be consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a), his motion for compassionate release (Doc. No. 172) is denied.

IT IS SO ORDERED.

Dated: **November 29, 2021**

/s/ Dale A. Drozd
UNITED STATES DISTRICT JUDGE